UNITED STATES DISTRICT COURT     SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
**ENTERED**
June 23, 2022
Nathan Ochsner, Clerk

| | | |
|---|---|---|
| Jennie Kay Lyle Bierscheid, *et al.*, | § | |
| | § | |
| Appellants, | § | |
| | § | |
| *versus* | § | Civil Action H-21-3751 |
| | § | |
| Henry R. Hamman, *et al.*, | § | |
| | § | |
| Appellees, | § | |
| | § | |

| | | |
|---|---|---|
| *In re* | § | |
| Houston Bluebonnet, L.L.C., | § | Bankruptcy 16-3251 |
| | § | |
| Debtor. | § | |

# Opinion on Appeal

1.   *Background.*

On June 6, 1913, Ima Hogg and others leased oil and gas rights to John Hamman covering 700 acres in Brazoria County. The contract reserved an one-eighth royalty interest for the Hoggs.

On October 17, 1913, John and George Hamman assigned certain leases, including the Hogg lease, to Producers Oil Company. George Hamman – with J.C. McKallip and F.N. Bullock – got a one-eighth net proceeds interest in oil, gas, and mineral sales after deducting royalties and ownership and operating expenses.

In 1914, after a set of assignments that equalized the interests in the net proceeds, George Hamman, John Hamman, and F.N. Bullock each owned one-fifth in the one-eighth net proceeds interest. Clarion Oil Company owned the remaining two-fifths. The appellees claim in this appeal derives from this portion of the Hamman's interest – two-fifths of the one-eighth net profit interest or a 5% interest.

In February 1919, Dan Japhet and others assigned a part of the Hogg lease to Humble Oil & Refining Company – including 20 acres covering Lots 17, 18, 19, and 20 that are the crux of the dispute in this appeal.

On June 22, 1920, after a dispute arose over accounting discrepancies, the then-owners of the one-eighth net proceeds interest in the 20 acres – George Hamman, John Hamman, F.N. Bullock, and Clarion Oil Company – settled with Humble, who owned the seven-eighth working interest in the land at the time.

During the late 1920s into the early 1930s, the Hogg lessors challenged the tax assessment on the 700 acres. The state trial court made various ownership determinations over parts of the land including the disputed 20 acres. The trial court's decision was ultimately upheld by the Texas Supreme Court in *Sheffield v. Hogg*, 77 S.W.2d 1021 (Tex. 1934).

In 1969, Humble assigned their rights to Salmon Corporation. Over the next 50 years, after a series of conveyances, Kenneth Lyle and others obtained portions of the interest in the 20 acres.

On November 25, 2013, Henry Hamman and the George and Mary Josephine Hamman Foundation sued Lyle and 13 other defendants – later including the appellants in this case: Jennie Kay Lyle Bierschied as executrix of Kenneth Lyle's estate, Lyle Engineering Company, Houston Bluebonnet, E&H, L.P., American Universal Investment Co., and Ester Suckle – in state court claiming right over a part of the net proceeds interest. In January 2016, Laura Hamman Fain and Elizabeth Hamman Oliver joined the lawsuit as successors to George Hamman.

On September 30, 2016, one of the defendants, Houston Bluebonnet, L.L.C., filed for chapter 11 bankruptcy in this district, later removing the case to the bankruptcy court.

In 2017, the parties filed cross-motions for partial summary judgment on a variety of issues. The bankruptcy court held that: (a) the 1920 agreement preserved the Hammans' interest through a savings clause; and (b) the Texas Supreme Court's decision in *Sheffield v. Hogg* did not preclude the Hammans' interest.

The parties later filed another round of cross-motions for partial summary judgment on liability and damages. The bankruptcy court held that the appellants were liable for the unpaid net proceed interests to the appellees.

The parties then filed a final round of briefing on damages and a few other ancillary issues. The bankruptcy court held that: (a) the appellants owed $128,000 in unpaid net proceed interests, (b) the appellants are joint and severally liable, (c) the appellants' legal expenses could not be deducted from the net proceed interest calculation, (d) the appellants owe pre-judgment interest, and (e) the appellants, excluding Bluebonnet and E&H, owe reasonable attorney's fees and costs.

On November 15, 2021, the appellants appealed all three decisions by the bankruptcy court.

2.     *Standard of Review.*

This court reviews *de novo*: (a) summary judgment decisions, (b) conclusions of law, (c) conclusions of mixed questions of law and fact, (d) the application of the law to the facts, (e) interpreting an unambiguous contract, and (f) whether a contract is ambiguous.[1] The court reviews factual findings for clear error.[2]

3.     *Bankruptcy Appeal.*

The appellants have raised 11 instances of error by the bankruptcy court as grounds for their appeal.

A.     *1913 Assignment.*

The appellants say that the bankruptcy court erred when it found that the 1913 assignment was a continuing contract. They argue that the Hammans had transferred and assigned their lease interests to Humble under the 1920 assignment and that the savings clause does not protect the net proceed interests.

---

[1] *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.),* 208 F.3d 498, 504 (5th Cir. 2000); *Stinnett v. Colo. Interstate Gas Co.,* 227 F.3d 247, 254 (5th Cir. 2000).

[2] *Id.*

The appellees counter by arguing that the 1920 assignment: (a) clarified Humble's interest; (b) allowed the Hammans to convert their interest to a working interest and back to a profit sharing; (c) clarified the accounting requirements; and (d) reserved the Hammans' net proceeds interest.

This dispute centers on interpreting the 1920 assignment's language and its impact on the 1913 assignment.

The key sections of the 1920 assignment:

Paragraph One ratified Humble's accounts and acknowledged a roughly $182,000 restricted credit to account for pre-assignment production.

Paragraph Two gave Humble the seven-eighths working interest, subject to the net proceeds interest.

Paragraphs Three and Four allowed the net proceeds owners to convert their interest between a working and profit-sharing interest.

Paragraph 7: "This agreement is not intended to modify or change the rights or obligations of second party with relation to third parties, jointly interested with Humble Oil & Refining Company. In order that this may not result, first parties hereby transfer and assign to second party all of their rights which they hold with respect to the leased premises herein described under the reservation of money-interest contained in the assignment from George Hamman et al. to Producers Oil Company above referred to, and hereby grant to second party the right to exercise and enjoy all such rights, commencing as of the date of transfer of said blocs seventeen (17), eighteen (18), nineteen (19), and twenty (20), by Dan Japhet et al. to Humble Oil & Refining Company, save where such grant might conflict with the rights of first parties under this adjustment of interest."

Paragraph 8: "Except as changed and modified hereby, the duties, obligations and relationship of second party to first parties as heretofore existant under said transfer above mentioned of date October 17, 1913, from said George Hamman et al. to Producers Oil Company, shall remain unaffected and unchanged.

This court's primary role when interpreting an unambiguous mineral interest contract is to determine the parties' intent from the contractual language.[3] The court examines the entire document itself to harmonize all parts and give effect to all provisions.[4] Considering the facts and circumstances surrounding execution may be used to aid in interpretation.[5]

The appellants argument is centered on interpreting paragraph seven. They assert three key clauses: (a) the present assignment clause which transferred *all* rights that the Hammans had in the land to Humble; (b) a retroactive grant clause which gave Humble the right to use and enjoy the land starting in February 2019; and (c) a savings clause that saves the Hammans interest only if the retroactive grant conflicts. They also claim that paragraphs three and four allow for converting the $182,000 restrictive credit. Based on this, they argue that the Hammans in 1920 only had the restrictive credit as an interest and no other interest in the land. Then, because the restrictive credit extinguished with Humble, today's Hammans have no remaining interest in the land and are entitled to nothing.

The main problem with the appellants' interpretation is that it would essentially read paragraphs three and four completely out of the contract. Paragraph three makes clear that the conversion concerns the one-eighth interest rather than the restrictive credit – "Upon the exercise of this option, [the Hammans'] interests shall immediately become, instead of a one-eighth (1/8) profit-sharing interest, a one-eighth (1/8) working interest." If paragraph seven,

---

[3] *Hysaw v. Dawkins*, 483 S.W.3d 1, 8 (Tex. 2016).

[4] *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986).

[5] *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981).

then, was intended to be a transfer of all interests – including the one-eighth interest – then why would the contract also offer the Hammans options in how they want that interest to function. The logical understanding of paragraph seven's assignment clause was to clarify that any other interest that the Hammans may have had over the lots – not specifically laid out by the rest of the agreement – belonged to Humble in order to remove the possibility of future disputes over ownership. The saving clause must intrinsically save both the grant itself and also the Hammans' one-eighth net proceeds interest.

The appellants insisting that the sole interest the Hammans kept was the $182,000 restrictive credit is also unavailing. Paragraph three also includes accounting requirements for Humble. It does not make sense that the Hammans would need access to accounting records if all they maintained was a fixed debt. The 1920 agreement clearly suggests that the restrictive credit was intended to resolve past accounting errors, clarify the ownership interests over the lots by reflecting the value Humble saw in its future rights over them, and to align the 1913, 1919, 1920, and other contracts covering the lots. Immense value exists in having clarity over ownership interests as lawsuit concerning land are vastly expensive – as clearly evinced by this current case.

Paragraph one also refers to the credit as "an additional restricted credit" which indicates that it was not meant to be the sole interest kept by the Hammans, but a second interest along with their one-eighth net proceed interest.

The parties and this court apparently agree that the 1920 agreement is not a perfectly written contract and has elements that seem to conflict. The court's role in interpreting is to give effect to all provisions, and that is what the court has done. The bankruptcy court did not err in interpreting the contract to hold that the Hammans maintained its one-eighth net-proceeds interest under the 1913 assignment after the 1920 agreement.

B.    *1920 Settlement and Assignment.*

The appellants say – in the alternative – that the bankruptcy court's finding that the 1920 assignment was unambiguous was erroneous. They argue that ambiguity may exist because, at a minimum, they have raised another reasonable interpretation of the 1920 assignment's language.

The appellees counter by arguing that their construction is the only reasonable one, so no ambiguity exists. They also insist that – since the appellants did not raise ambiguity before the bankruptcy court – it has been waived on appeal.

A court may determine that a contract is ambiguous even if it is not claimed to be by the parties.[6] Even if ambiguity is raised for the first time on appeal, this court may review the contract to determine whether it is ambiguous.[7] A contract is ambiguous if its meaning is uncertain or is reasonably susceptible to multiple meanings.[8]

As explained in more detail in the previous section, the appellants' interpretation of the 1920 agreement would read multiple paragraphs out of the contract – making this interpretation unreasonable. Because the court finds that the 1920 agreement is not reasonably susceptible to multiple meanings, it is not ambiguous.

The bankruptcy court correctly held the 1920 agreement unambiguous.


C.     *Res Judicata.*

The appellants say that the bankruptcy court erred when it did not find that the appellees' claims were precluded by *Sheffield v. Hogg*. They insist that this case was a final judicial title determination that binds all parties and their heirs. The appellants claim that the Hammans owned no interest after this case.

The appellees counter by arguing that *res judicata* does not apply because the Hammans were not parties to the case nor successors. They also claim that *Sheffield v. Hogg* did not adjudicate title adversely to the Hammans.

---

[6] *Progressive Cty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 808 (Tex. 2009).

[7] *Sage St. Assoc. v. Northdale Const. Co.*, 863 S.W.2d 438, 445 (Tex. 1993).

[8] *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

*Res Judicata* precludes claims that were previously adjudicated or that arose from the same subject matter – the same transaction or series of connected transactions – and could have been litigated.[9] For this doctrine to apply, the appellants must show: (a) a prior final judgment on the merits by a court of competent jurisdiction; (b) the parties of the prior lawsuit or those in privity with them; and (c) the second case is based on the same claims as the first or are claims that could have been raised.[10] A person is in privity if he: (a) could control the prior action even if not a party; (b) could have been represented by a party in the prior action; or (c) is a successor in interest to a party.[11] Collateral estoppel prevents re-litigating ultimate issues if facts that were actually litigated and essential to a prior judgment.[12]

*Sheffield v. Hogg* was the culmination of the Hoggs' challenge to the tax assessment of their one-eighth interest in the 700 acres. The state court's ultimate conclusion concerned how that one-eighth royalty interest was to be classified. The Texas Supreme Court held that it was a real property interest, so it was taxable. It also recognized that the other seven-eighths interest in the oil and minerals in the land was owned by various oil companies.

The appellants argue that this case was a title determination over the entire 700 acre Hogg lease, including the 20 acres in question. They insist that the state court determined that the Hoggs had a one-eighth royalty interest and Humble had a seven-eighths leasehold interest – culminating in a full eight-eighths interest, so the Hammans could not have a one-eighth interest on top. They say that the Hammans were in privity with the Hoggs through the 1913 assignment and with Humble through the 1920 agreement. The appellants believe that *res judicata* and collateral estoppel would then preclude the appellees from having any ownership interest in the 20 acres.

---

[9] *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996); *see also Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 630-31 (Tex. 1992).

[10] *Id.*

[11] *Id.*

[12] *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984).

The state court's decision was a final judgment, but the opportune portion of the standard is that the judgment must be on the merits. The appellants appear to be incorrect concerning what merits were decided. The state court determined whether the Hoggs were required to pay taxes – not an all-binding title determination. The decision dealt with the entire 700 acre Hogg lease. The Hammans' interest in 20 acres is a portion of Humble's seven-eighths portion – or an interest within an interest. The appellants' greater than 100% argument is unfounded. The state court decision did not touch on the Hammans' interest.

The Hammans were not a party nor in privity with a party in *Sheffield*. The Hammans had no control over the tax decisions, the Hoggs nor Humble represented the Hammans' interest in the tax determination, and the Hammans were not successors in interest to any party. The appellants' significantly expansive interpretation of privity does not hold muster. The mere existence of a contract between parties does not automatically establish privity in every conceivable relationship or situation between those parties. The Hammans' interest in the 20 acres was not represented and could not have been properly represented without their presence in the case. The appellees, then today, cannot be bound by *Sheffield*.

The bankruptcy court did not err in denying the appellants' defenses of *res judicata* and collateral estoppel.

D.    *Proof of Ownership over Lots 17-18.*

The appellants say that the appellees never met their burden to show that they owned an interest in Lots 17-18. They argue that the Hoggs did not have title to those lots when they leased to the Hammans, and the after-acquired title doctrine cannot cure it.

The appellees counter by arguing that ownership over the lots was decided by *Bierscheid v. JPMorgan Chase Bank*, 606 S.W.3d 493 (Tex.App.—Houston[1st Dist.] 2020), and the appellants are precluded from litigating it now. They also insists that the lots were expressly covered by the leases and assignments.

This court may consider collateral estoppel for the first time on appeal if the record contains all relevant facts necessary to apply it.[13] For collateral estoppel to apply, the appellees must show that: (a) the facts sought to be litigated in this case were fully and fairly litigated in the first; (b) the facts were essential to the judgment; and (c) the parties in this case were cast as adversaries in the first lawsuit.[14]

The 2020 Texas Appellate Court case may involve the exact issue that is disputed here – when did the Hammans have a legally recognized ownership right over lots 17 and 18. The Appellate Court found that – at a minimum – no evidence existed to show that John Hamman had notice of this title defect when he obtained his interest in the lots in 1913, because none of the contracts that purported to show that the Hoggs acquired title after the fact were recorded. The Appellate Court referred to the two leases that corrected the Hoggs title over the lots, but ultimately did not consider them as they were not before the trial court. The court, however, is not blind to the fact that the appellants in this case only included the more favorable of the two leases in the record of this case. The key obstacle to applying collateral estoppel in this case is that the parties were not adversaries in the first case. This court, then, cannot apply collateral estoppel.

This issue then turns on whether the appellants are now able to challenge the title that the Hammans acquired in 1913. The majority of the briefing on this issue concerns the after-acquired title doctrine and whether it applies to the original transfer from the Hoggs to the Hammans. Texas courts have struggled with how best to apply this principle to oil and gas leases and what title guarantees need be made in the leases.

In this case, a factual distinction exists to differentiate it from those past cases and allow this court to determine this issue without going down the rabbit hole those state court cases have created. The 1920 agreement between the Hammans and Humble settled the ownership and all other outstanding disputes over lots 17-20. This agreement was finalized after the Hoggs purportedly

---

[13] *Energy Dev. Corp. v. St. Martin*, 296 F.3d 356, 361 (5th Cir. 2002).

[14] *In re Plunk*, 481 F.3d 302, 307 (5th Cir. 2007).

acquired interest over lots 17 and 18 – which the appellants claim was in February 1918 and December 1919. Humble acknowledged the Hammans' interest over lots 17-20 and established that they maintained a valid interest in lots 17-20 – which intrinsically would include proper title. The 1920 agreement – and all subsequent agreements – also recognized the Hammans' interest in the lots, forming the crux of the bankruptcy court's determination of this issue. The 1920 agreement is binding on all successors and assigns including the appellants. General principles of equity and estoppel establish that the Hammans' interest in the lots has been resolved.

The bankruptcy court did not err in finding that the appellees did not meet their burden to prove ownership over lots 17 and 18.

E.     *Pre-Judgment Interest Award.*

The appellants say that the bankruptcy court erred when it awarded pre-judgment interest under Texas common law. They argue that no legal basis supported the award because equitable pre-judgment interest is barred if it conflicts with a statute – in this case being Texas Natural Resource Code § 91.402(b) concerning title disputes.

The appellees respond by arguing that this section does not apply because no legitimate title dispute existed. They also insist that the common law pre-judgment interest is available because they also pursued a common-law breach of contract claim with their claim under the Natural Resource Code.

Texas Natural Resources Code section 91.402(b)(1)(A) says that "Payments may be withheld without interest ... if there is a dispute concerning title that would affect distribution of payments."

Texas law allows for equitable awards of pre-judgment interest.[15] This includes breach of contract claims.[16] Pre-judgment interest generally should be awarded unless exceptional circumstances exist.[17]

The appellants rely on *Concord Oil Co. v. Pennzoil Exploration & Prod. Co.*, 966 S.W.2d 451 (Tex. 1998), and *Headington Oil Co. v. White*, 287 S.W.3d 204, 209-12 (Tex.App.—Houston[14th Dist.] 2009), for the proposition that equitable pre-judgment interest is not recoverable when it would be at odds with a statute – specifically section 91.204(b). Both cases are distinguishable, however, as no breach of contract claim was pleaded in either – just a claim under the Natural Resources Code – and the courts highlighted that no contract existed between the parties.

The Texas Supreme Court has clarified that section 91 of the Natural Resources Code does not override common law breach of contract claims and rights associated with those claims.[18] The Hammans may have began by seeking relief under section 91, but, as correctly addressed by the bankruptcy court, they did not proceed on those claims. The Hammans prosecuted their case as a breach of contract claim, succeeded on that claim, and pre-judgment interest is available for breach of contract. Because the Hammans did not continue their Natural Resources non-payment claim, they were not entitled to pre-judgment interest under section 91.403, so it would be illogical to bar pre-judgment interest under section 91.402(b).

The bankruptcy court did not err in awarding pre-judgment interest.

---

[15] *Fortitude Energy, LLC v. Sooner Pipe, LLC*, 564 S.W.3d 167, 188 (Tex.App. —Houston[1st Dist.] 2018).

[16] *Trevino v. City of Pearland*, 531 S.W.3d 290, 297 (Tex.App.—Houston[14th Dist.] 2017).

[17] *In re Okedokun*, 968 F.3d 378, 392 (5th Cir. 2020).

[18] *ConocoPhillips Company v. Koopmann*, 547 S.W.3d 858, 875-79 (Tex. 2018).

F.    *Attorneys' Fees for Laura Hamman Fain and Elizabeth Hamman
      Oliver.*

The appellants say that the bankruptcy court erred when it awarded Laura
Hamman Fain and Elizabeth Hamman Oliver attorney's fees under Texas Civil
Practice and Remedies Code § 38.001. They argue that Fain and Oliver did not
meet the pre-requisite of presenting their claims, but merely joined the original
state court lawsuit over two years after it began.

The appellees respond that, because the appellants did not specifically
deny that presentment occurred, they were not obliged to prove it occurred.
They also contend that other Hammans presented in the original lawsuit, so the
need for Fain and Oliver to formally present separately was unnecessary.

Presentment of a claim to the opposing party is a substantive prerequisite
to recovering attorney's fees under section 38.001.[19] A strict, formal presentment
is not required as long as the claimant gives notice that: (a) he is asserting the
claim, (b) he requests compliance, and (c) the opposing party did not pay.[20] The
claimant is burdened with proving that presentment was proper.[21] Filing a
lawsuit, nor alleging the demand in a pleading is, alone, adequate to be proper
presentment.[22]

Texas Rule of Civil Procedure 54 allows for generally averring that all
conditions precedent are met, but a claimant must only prove those that are
specifically denied. Generally responding, however, that all conditions precedent

---

[19] *Playboy Enters., Inc. v. Sanchez-Campuzano*, 561 Fed. App'x 306, 309 (5th Cir.
2013).

[20] *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981); *Quality Infusion Care, Inc. v.
Health Care Serv. Corp.*, 224 S.W.3d 369, 387 (Tex.App.—Houston[1st Dist.]
2006).

[21] *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983).

[22] *Note Invs. Group, Inc. v. Assocs. First Cap. Corp.*, 476 S.W.3d 463, 485
(Tex.App.—Belmont 2015).

did not happen is inadequate as a specific denial.[23] To be preserved on appeal, however, an issue must be clearly presented and pressed in the lower court.[24]

The parties do not dispute that Henry Hamman and the George and Mary Josephine Hamman Foundation sent a pre-suit demand letter in 2013. The appellants contend that, when Fain and Oliver joined the lawsuit in 2016, they were required to present their claims separately to be eligible for attorney's fees.

In the second amended petition – in which Fain and Oliver joined – the Hammans pleaded that all conditions precedent had occurred, and this is initially sufficient under Texas law. The appellants responded in their answer and counterclaims by generally denying that the conditions precedent had occurred which is inadequate to be a specific denial, so Fain and Oliver were not required to prove they presented their claims.

While the court could not find a Texas case directly poignant to this issue, it also does not see why logically the other Hammans' presentment would not be imputed to Oliver and Fain. They are making identical claims under the same theories and are claiming ownership over the same interest. Considering the appellants' forceful contesting of those claims, it would have been a waste of resources to spend time formally presenting.

The court, regardless, is not certain that the appellants properly reserved this issue for appeal. The sole reference to presentment by the appellants that the court could find in the record was two sentences tucked into a larger paragraph on attorney's fees. It gave no explanation, was largely conclusory, and no law was cited. It was a quaternary argument at best. This does not appear to be clearly presented and pressed before the bankruptcy court.

The bankruptcy court did not err when it awarded Fain and Oliver attorney's fees.

---

[23] *Shin-Con Dev. Corp. v. I.P. Invs., Ltd.*, 270 S.W.3d 759, 768 (Tex.App.—Dallas 2008).

[24] *Williams v. Homeland Ins. Co.*, 18 F.4th 806, 811 n.6 (5th Cir. 2021).

G.    *Imposing Joint and Several Liability.*

The appellants say that imposing joint and several liability was erroneous because the appellees did not plead it, this type of damage is one normally paid proportionally, and no contractual duty required it.

The appellees counter by arguing that the appellants did not preserve this error and that the obligations ran with the land as a whole regardless of how many pieces the interest was divided.

The appellees argue that the appellants waived this issue on appeal by not forming it in a motion for judgment as a matter of law and that their pre-amended-judgment supplemental statement was insufficient to preserve. As this case did not involve a jury trial, a rule 50 motion for judgment as a matter of law was inapplicable. The appellants clearly objected in its supplemental statement to joint and several liability before the bankruptcy court signed its amended judgment, and the bankruptcy court had an opportunity to address it.[25] This issue is not waived on appeal.

Under Texas contract law, joint and several liability usually arises when two or more promisors in the same contract promise the same performance to the same promisee.[26] Whether liability of several promisors, whose interests are separate, are joint and several depends on the intent of the parties in the contracts.[27] An assignee cannot be held liable under another party's contract without some express or implied assumption of the obligations of that contract.[28]

Texas law unequivocally holds that "interest follows principal."[29]

---

[25] *See Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022); *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994).

[26] *Pitman v. Lightfoot*, 937 S.W.2d 496, 528 (Tex.App.—San Antonio 1996).

[27] *InvesetIN.com Corp. v. Europa Intern., Ltd.*, 293 S.W.3d 819, 828 (Tex.App.—Dallas 2009).

[28] *Regency Advantage L.P. v. Bingo Idea-Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex. 1996).

[29] *City of Pearland v. Reliant Energy Entex*, 62 S.W.2d 253, 256 (Tex.App.—Houston[14 Dist.] 2001).

Joint and several liability as it relates to attorney's fees is reviewed for abuse of discretion.[30] Factors to consider when imposing joint and several liability for attorney's fees include whether: (a) it is an equitable result; (b) a single, indivisible injury exists; (c) each party played a substantial role; and (d) the legal defense was joint.[31] An injury is indivisible if it cannot be apportioned with a reasonable certainty.[32]

The appellants argue that joint and several liability does not apply because: (a) the appellees sought their damages proportionally; (b) they did not separately agree to assume the obligations of the others or promise the same performance of the same promise; and (c) the 1913 assignment did not expressly create joint and several liability. They believe that the damages should be proportional to each of their respective share of the interest and, in turn, that should flow to pre-judgment interest and attorney's fees.

Because Texas courts have not addressed imposing joint and several liability in the context similar to this case, the appellants rely on a Wyoming Supreme Court case – *Ultra Resources, Inc. v. Hartman*, 226 P.3d 889, 933-34 (Wyo. 2010) – for the general proposition that the most equitable solution is to have the non-operating, working interest owners pay according to their ownership share.

The appellees respond by saying that: (a) the 1913 assignment did not explicitly create proportional, several liability; (b) all of the appellants took their interest subject to the obligations under the 1913 and 1920 agreements; (c) the appellants' agreement on how to divide the obligation does not bind the Hammans; (d) for attorney's fees, the same amount of work was done as to all appellants regardless of the size of their share; and (e) the most equitable solution should not allow the slicing up of the total responsibility of performance into smaller chunks.

---

[30] *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996).

[31] *Id.* at 772-73.

[32] *See Dean v. Gladney*, 621 F.2d 1331, 1339 (5th Cir. 1980).

This court agrees that Texas courts have not addressed joint and several liability in a context similar to this case. The parties essentially argue for the solution that they believe is the most equitable. Following how Texas courts have applied principles of joint and several liability in other contexts, this court agrees with the appellees that it is most equitable to allow joint and several liability in this case. Texas courts generally allow for joint and several liability regardless of what may be proportional fault by the damaging parties.[33] Later suits for contribution between the parties that paid the damages to correct for proportional shares have always been and continue to be available. The court is sympathetic to the appellees' concerns about having to track down payment between multiple parties who may be shielded from fault. While the court appreciates the appeal of the Wyoming Supreme Court case, it is applying Wyoming principles to Wyoming law. This case is in Texas, and the court must glean from Texas principles and law.

Irrespective of equity, each appellant when they obtained their interest in the land agreed to be obliged to the 1913 and 1920 agreements. Those agreements bound all successors and assigns to the original terms. Each appellant promised to pay the net proceed interest to the Hammans under the 1913 and 1920 agreements. It may be a rather nuanced way of promising the same performance of the same promise, but the law does not fail based on nuance.

Attorney's fees may also be joint and several. As the court has hopefully articulated fully, the injury is singular. The appellants do not seem to contest that the defense was largely joint. The ownership share also would not necessarily equate to the amount of work done relating to each share. Proving liability of a small share may require more work than proving liability of a larger share. The bankruptcy court did not abuse its discretion in applying joint and several liability to attorney's fees, and it did not err regardless of the standard.

The bankruptcy court did not err in holding the appellants jointly and severally liable.

---

[33] *See generally C&H Nationwide v. Thompson*, 903 S.W.2d 315 (Tex. 1994); *In re Sewell*, 413 B.R. 562 (E.D.T.X. 2009); Texas Civil Practice & Remedies Code § 33.013-016.

H.    *Rulings on Partial Summary Judgment Motions, Affirmative Defenses,
      and Counterclaims.*

Because the bankruptcy court did not err on the substantive issues argued
in this appeal, its rulings on the motions for partial summary judgment,
affirmative defenses and counterclaims will also be affirmed.

The appellants make sporadic and blanket statements concerning their
affirmative defenses and counterclaims beyond the ones specifically delineated in
their substantive issues above. The court will not consider these as constructive
arguments because the appellants do not defend them in the briefing.


4.    *Conclusion.*

The bankruptcy court's September 15, 2017, Memorandum Opinion and
Order; February 20, 2020, Memorandum Opinion and Order; October 5, 2021,
Memorandum Opinion and Judgment; and November 1, 2021, Amended
Judgment will be affirmed.


Signed on June **23**, 2022, at Houston, Texas.


Lynn N. Hughes
United States District Judge